# WOLFPOPPER

Robert C. Finkel
845 Third Avenue
New York, NY 10022
212-451-9620
rfinkel@wolfpopper.com

January 23, 2024

**By ECF**
The Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

Re:  *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No. 1:23-cv-10768-PAE

Dear Judge Engelmayer:

We represent the plaintiff, Margaret McCrary, in the above-referenced action and write in opposition to Merrill's pre-motion letter requesting a stay.[1]  Merrill is not entitled to a stay because it cannot demonstrate "a clear case of hardship or inequity" in litigating.  *Rankine v Levi Strauss & Co*., No. 1:22-CV-03362-LTS, 2023 US Dist. LEXIS 89064, at *19 (S.D.N.Y. May 22, 2023).  And the requested stay of indeterminant but likely multi-year duration would cause substantial prejudice to plaintiff and the putative class.  Moreover, a stay would neither promote efficiency nor "avoid the risk of inconsistent rulings," Ltr. at 1, given that the putative class definitions, class periods, and challenged conduct are all different in the *Valelly* and *McCrary* actions. Merrill is seeking a stay to avoid having to defend recent conduct that, in plaintiff's view, is not defensible.

**The *Valelly* Action**
*Valelly* was filed in August 2019, and alleges that the interest rates paid on customer cash in Merrill's Retirement Asset Savings Program ("RASP"), whereby Merrill sweeps customer cash to its affiliate, Bank of America, N.A. ("BANA"), were unreasonably low and therefore in breach of Merrill's Client Relationship Agreement ("CRA"), which states that "[t]he interest paid on retirement account assets will be at no less than a reasonable rate." *Valelly*'s allegations are based, among other things, on the conflict of interest inherent when Merrill sweeps cash to BANA. Merrill and BANA are motivated to breach the CRA by paying investors as low a rate as possible on their cash. Merrill's RASP rates were unreasonable because they were far below market interest rates determined with reference to the Federal Funds ("FF") rate.

At the time *Valelly* was filed, the FF rate had peaked at 2.54% and Merrill was paying between 0.14% and 0.75% on cash held in retirement accounts on a tiered basis (depending on the value of assets under management ("AUM")).  Beginning in March 2020 (the start of the Covid-19 pandemic), market interest rates went close to zero and remained there for two years, reducing further prospective class-wide compensatory damages to virtually zero.  Accordingly, the proposed class period in Valelly's motion for class certification dated March 4, 2022, which the Court dismissed without prejudice, ended in March 2020 (*Valelly* ECF 91).  Valelly terminated her

---

[1] ECF 14. This case was reassigned to Your Honor earlier today.  Merrill's request was addressed to Judge Torres, who requires pre-motion conferences and letters.  This is plaintiff's response.

**WOLF POPPER**

The Honorable Paul A. Engelmayer

Merrill accounts in 2021, and is potentially situated differently than currently existing customers with respect to ongoing claims, who are entitled to injunctive relief, in addition to damages.

The parties in *Valelly* have engaged in substantial litigation, including merits discovery. However, Valelly has no merits discovery regarding events after March 2020. In connection with Valelly seeking from Merrill expert-related information for later periods, Merrill objected on grounds that Valelly's class period ended in 2020. *Valelly* ECF 215 at 2. Although the case is approaching 4.5 years in tenure, it has been aggressively defended and a number of motions have been denied without prejudice and subsequently refiled, or are being briefed or remain to be filed. The parties are currently briefing *Daubert* motions and, following resolution of those motions, anticipate briefing summary judgment and class certification motions.

**The *McCrary* Action Concerns a Different Class, Different Class Period, and Different Challenged Conduct; Judge Caproni Found the Cases to Be Unrelated**
Plaintiffs' counsel filed the *McCrary* action in December 2023 based on facts that developed subsequent to March 2020. Interest rates began to rise again in 2022 and rose dramatically in 2023. Market interest rates as reflected, for example, by the FF rate, now exceed 5.0%. However, throughout 2022 and to this day, Merrill paid ***0.01%*** on cash balances on accounts with AUM up to $1 million, i.e., 500 times ***lower*** than the contemporaneous FF rate. *McCrary* ¶141. Given the even larger disparity between sweep rates and FF rates, allegations that Merrill failed to pay a reasonable interest rate are likely more compelling in this later period.[2] Merrill will be hard pressed to argue that paying essentially no interest at all is somehow objectively "reasonable" when the FF rate and other arms-length rates are near 5.0%.

There are also other important differences for the later period covered in *McCrary*. For example, this later period has seen the exploding popularity of brokerage competitors like Robinhood, who pay (compared to RASP) significantly higher sweep rates.[3] Concurrently, other brokerages comparable to Merrill such as Fidelity Investments, commenced offering retirement customers rates as high as 2.72% APY on swept cash, irrespective of AUM. Similarly, R.W. Baird compensated retirement customers, commencing September 8, 2023, with rates ranging from 2.07% to 4.15% on swept cash, contingent on cash balances. *McCrary* ¶5.

In short, *McCrary* alleges the same claim as *Valelly*—that the interest rates paid by Merrill on retirement cash swept to BANA are in breach of the CRA—however, the underlying facts giving rise to the claims are significantly different.

Counsel's intentions to file a separate case were discussed at a November 16, 2023 court conference. Counsel did not "acknowledge" that a stay of this instant action was the correct course of action. Ltr. at 3. Rather, counsel stated it was his initial "sense" to hold the second action "generally in abeyance" ***if*** Merrill responded to the complaint, which it is now refusing to do, and

---

[2] The FF rate, for purposes of this letter, is a useful short-hand in showing how deficient Merrill's rates are. Market rates for variable interest-bearing consumer products customarily react to changes in the FF rate; that Merrill has lowered RASP rates to 0.01% notwithstanding historical *increases* in FF rates is an indicium of unreasonableness. *See McCrary* ¶141 (chart showing clear correlation between FF rate and other market rates, with exception of RASP).

[3] *See, e.g., McCrary* ¶94 (noting that Interactive Brokers, Robinhood, Robinhood Gold, and WeBull pay, respectively, 4.83%, 1.5%, 4.9%, and 5% on swept cash).

**WOLF POPPER**

The Honorable Paul A. Engelmayer

*if* Merrill produced discovery.[4]  At any rate, counsel's remarks were made before the filing of the *McCrary* case and assumed that Judge Caproni would treat the case as related.  On December 13, 2023, Judge Caproni found *McCrary* to be unrelated to *Valelly*, allowing the two cases to proceed on different tracks, which is instructive if not dispositive of Merrill's stay motion.[5]

However, even assuming the cases are related, there is no risk of inconsistent rulings because the claims are on behalf of different, non-overlapping putative classes, and concern different challenged rate-setting decisions by Merrill during different rate environments.  Assuming a class is certified in *Valelly*, rulings in that case could not bind the class proposed in *McCrary*.  As noted, Merrill has already argued that the putative class period in the *Valelly* action ends in 2020, which prompted the filing of the *McCrary* action, on behalf of a class for the later class period.

**Merrill's Prejudice and "Judicial Economy" Arguments All Fail**
Merrill argues that "a stay would not prejudice McCrary because the *Valelly* Action will fully resolve or meaningfully narrow the *McCrary* Action" and that, absent a stay, Merrill will be prejudiced as it "would be forced to expend time and resources prematurely (and potentially unnecessarily) litigating this action even though many (and perhaps all) of the issues in this action will be disposed of in the *Valelly* Action." Ltr. at 3.  Both arguments suffer from the same defect described above: the cases concern different class periods, different rate decisions, and different class definitions.  No class certification briefing is currently scheduled in *Valelly*, but rulings even after a class is certified could not possibly "narrow" any of the issues in *McCrary* under Rule 23 and basic notions of due process, given the differing classes.  The putative class members in *McCrary* have received no discovery into Merrill's misconduct with respect to the class period that affects them, yet Merrill is suggesting that those class members should be bound by rulings in a different case concerning different alleged misconduct.  At bottom, regardless of the outcome in *Valelly*, and regardless of whether a stay is issued in *McCrary*, litigation (including discovery) of *McCrary*'s class claims is inevitable.  There is no reason to delay it, to the great prejudice of McCrary and other retirement accountholders, who, every day, are being underpaid by Merrill.

The prejudice to the *McCrary* class is real.  At least one high-ranking witness in *Valelly* who was involved in consequential rate-setting recommendations and who had important oral discussions with BANA leadership about these recommendations is now deceased.   And, as this Court is aware, with time, memories fade, and despite the best retention efforts, documents are sometimes destroyed, and witnesses move out of the jurisdiction and are unavailable for trial.  By contrast, it is well-settled that being compelled to defend litigation does not constitute prejudice.[6]

---

[4] The full quote from the hearing, rather than the truncated one from Merrill is as follows: "So my intention would be to file the complaint. If Merrill wants to move to dismiss it, I think it will be basically similarly to the elements that, your Honor sustained. So maybe they will just answer it. Maybe it will take a little discovery, but my sense is to hold that generally in abeyance while we complete the litigation on the first case. That's at least my objective." Of note, Judge Caproni was "surpris[ed]" at the conference to learn that RASP rates had dropped to 0.01%, remarking that ***"[o]ne has to wonder why anybody keeps their money in Merrill Lynch under those circumstances."***

[5] While counsel identified the cases as "related," the statement of relatedness specifically noted that "the merits of the two actions are different in that the rates paid by Merrill are lower in the second period and underlying market conditions are different." ECF 4.  Judge Caproni agreed when she found the cases to be unrelated.

[6] *L-7 Designs, Inc. v. Old Navy, LLC*, 964 F. Supp. 2d 299, 320 (S.D.N.Y. 2013) ("it is well established that litigation costs do not rise to the level of irreparable injury") (citations omitted).  *Credit Suisse Sec. (USA) LLC v. Laver*, (Ltr. at 3) is distinguishable as Judge Torres stated that the appeal in the related case was "fully briefed" and

**WOLF POPPER**
The Honorable Paul A. Engelmayer

**The Issue of Benchmarks, Which Merrill Mischaracterizes, Is Irrelevant to its Motion**
While not directly relevant to determining whether a stay is proper, Merrill mischaracterizes the rulings in *Valelly* on potential benchmarks. As background, Judge Caproni ruled that Valelly could not rely on comparisons to interest rates paid by government money market funds ("GMMFs"); despite disagreeing with the ruling, Valelly will not rely on them. *Valelly* ECF 212 at 4. Merrill, however, takes the ruling a step further by suggesting that comparisons to non-sweep products are barred. Ltr. at 2. That would be news to Judge Caproni, who sustained Valelly's claims based on data making comparisons to non-sweep products. *See Valelly* ECF 54 at 3 (Motion to Amend Decision); *Valelly* ECF 182 at 12 n.11 (Motion to Reconsider Decision). In light of these decisions, Dr. Palia included a damages analysis relying on this very data the Court found persuasive. Merrill's letter omits reference to this obviously appropriate benchmark.

Merrill's argument that a contrary result in this case regarding GMMFs risks "inconsistent rulings" exaggerates the issue: there will always be different damages models and calculations when different class periods, different rates, and different economic and business conditions are at issue. Rulings in the two cases may be different, but they affect different classes, and they do not conflict with one another in any manner that prejudices Merrill, which sought different class periods.[7] For example, even if the Court or jury in *Valelly* were to accept Merrill's argument that the rates paid in 2017-20 were reasonable because they were at or about the 25th percentile of comparable conflicted sweep rates based on Merrill's expert's data, the rates paid in 2022-23 fell well below that. Thus, even by Merrill's benchmark, they were unreasonable in the later period.

*       *       *

Fundamentally, Merrill seeks a stay because it does not want to proceed with litigation in which it will be compelled to defend its recent decisions to pay essentially ***no*** interest at all to retirement account holders during a high interest rate environment. Under any benchmark, RASP rates are unreasonable, entitling the putative class to damages and a permanent injunction requiring Merrill to comply with its agreement with retirement account holders. In light of the foregoing, Merrill's request for a stay should be denied. We are available at the Court's convenience.[8]

---

"unlikely [to]…take years" to resolve, and, accordingly, the prejudice suffered by the plaintiff was "minimal." 2019 WL 2325609, at *5 (S.D.N.Y. May 29, 2019). By contrast, the stay requested by Merrill would assuredly last several years: putting aside any appeals following final judgment (which would likely take additional years to resolve), there is not even an anticipated date for summary judgment or class certification motions, which will not occur until resolution of the *Daubert* motions, which the parties are currently briefing. *Credit Suisse* also noted that in the event of a Ninth Circuit affirmance, it was possible that the district court "will not need to rule on the petition to compel." *Id.* at *8. As noted above, there is no scenario (absent a global settlement) that would stave off litigation here.

[7] Defendant repeatedly refers to the issue of benchmarking as a "threshold" litigation question, which is backwards. Ltr. at 3. The complex, factually-rife issue of a proper benchmark to determine reasonableness is ultimately a merits issue requiring a trial.

[8] Plaintiff does not oppose staying Merrill's time to respond to the complaint during the pendency of its letter motion. But Merrill is wrong to suggest that plaintiff McCrary agreed to a 60-day extension (Ltr. at 4), which Merrill never proposed and which plaintiff never considered. An additional 60-day extension is likely not necessary in light of Merrill's contention that the issues presented in *McCrary* and *Valelly* are the same.

**WOLF POPPER**

The Honorable Paul A. Engelmayer

Respectfully,

*Robert C. Finkel*

Robert C. Finkel

CC: All Counsel of Record