USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH CASH SWEEP PROGRAMS | 23-CV-10768 (MMG) |
| | **OPINION & ORDER** |

MARGARET M. GARNETT, United States District Judge:

This is one in a long line of cases regarding low-interest "cash sweep" practices at brokerages. Plaintiffs, suing on behalf of a putative class, are a group of individuals that held accounts subject to cash sweep programs at Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill"). Defendants are Bank of America Corporation, and its wholly-owned subsidiaries, Merrill, Bank of America, N.A., and Managed Account Advisors LLC. Plaintiffs held cash in various accounts at Merrill that Merrill swept to deposit accounts at affiliate banks under three automatic cash sweep programs. Plaintiffs bring this suit to recover damages allegedly arising out of Defendants' failure to pay reasonable interest on cash swept from Plaintiffs' accounts, to the benefit of Defendants.

Plaintiffs' amended Consolidated Class Action Complaint ("Complaint"), Dkt. No. 63 ("Compl."), asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, negligent misrepresentation and omissions, unjust enrichment, and violation of New York General Business Law Section 349, on behalf of themselves and a putative class. Defendants move to dismiss the Complaint in its entirety and strike certain allegations contained therein. *See* Dkt. Nos. 77, 78 ("Mot."). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. RELEVANT FACTS[1]

#### A. The Parties

Bank of America Corporation ("BAC") is a financial services company that conducts business throughout the United States. Compl. ¶ 12. Merrill, a wholly-owned subsidiary of BAC, *id.* at 1, is a broker-dealer and Registered Investment Advisor offering brokerage and investment advisory services to its clients, *id.* ¶ 13. Merrill operates certain brokerage accounts that feature cash-sweeping arrangements. Bank of America, N.A. ("BANA") is a nationally chartered bank, and is on the receiving end of cash swept from Merrill accounts. *Id.* ¶ 14. Managed Account Advisors LLC ("MAA"), another wholly-owned subsidiary of BAC, *id.* at 1, is a Registered Investment Advisor that provides investment management services, portfolio management, asset allocation, brokerage, and consulting services to retail investors. *Id.* ¶ 15. As part of these services, MAA participates in the administration of the cash sweep programs by, among other things, "implementing cash allocation strategies." *Id.*

Plaintiffs are James Bertonis, Margaret McCrary, and Robert J. Campton Jr. *Id.* ¶¶ 8–11. During the relevant period, Plaintiffs held various accounts with Merrill that were subject to cash sweeps. *Id.* Bertonis held a Cash Management Account ("CMA") and a Roth Individual Retirement Account ("Roth IRA"). *Id.* ¶ 8. McCrary held a Traditional Individual Retirement

---

[1] These facts are primarily sourced from the Complaint, and presumed true for purposes of deciding the Motion. *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) ("In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))). Citations are to the original pagination from party filings.

Account ("IRA"). *Id.* ¶ 10. And Campton held a CMA, an IRA, and a Roth IRA. *Id.* ¶ 11. All identified accounts were subject to cash sweep programs.

**B. The Sweep Programs**

For CMA, IRA, and Roth IRA accounts, Merrill operated three distinct automatic cash sweep programs: the Bank Deposit Program ("MLBDP"), the Direct Deposit Program ("MLDDP"), and the Retirement Asset Savings Program ("RASP") (collectively, the "Sweep Programs"). *Id.* ¶¶ 8, 11, 16.[2] The MLBDP and MLDDP swept cash from non-retirement accounts while the RASP swept cash from retirement accounts. *Id.* ¶ 17. Under the Sweep Programs, Merrill exercised broad managerial discretion in sweeping uninvested cash deposits from Merrill customer accounts into interest-bearing FDIC-insured deposit accounts at BANA and Bank of America California, N.A. *Id.* ¶¶ 18–19. Merrill used its discretion to sweep customer funds only into deposit accounts at BANA and Bank of America California, N.A.—Merrill affiliates. *Id.* ¶ 21. The RASP and MLBDP offered variable interest rates ranging from 0.01% to 0.15% on client funds depending on a customer's total assets under Merrill's management, while the MLDDP generally paid uniform rates of 0.01% interest.[3] *Id.* ¶ 20.

**1. Client Relationship Agreements**

The Sweep Programs were governed by various agreements depending on the type of customer account. *Id.* ¶ 22. Merrill offered account services through either Merrill Edge ("Edge"), for customer-managed accounts, or Merrill Lynch Wealth Management ("MLWM"), for advised accounts. *Id.* ¶ 16. Accounts through Edge are governed by the Merrill Edge Self-Directed Investing Client Relationship Agreement ("Edge CR Agreement"). *Id.* ¶ 22. Accounts

[2] For ease of reference, this Opinion adopts the acronyms used in the Complaint and the parties' briefing.

[3] These specific interest rates reflect the Sweep Programs as of May 22, 2025. Compl. ¶ 20.

through MLWM are governed by the Merrill Client Relationship Summary and Client Relationship Agreement ("MLWM CR Agreement"). *Id.* Both the Edge CR Agreement and the MLWM CR Agreement (collectively, the "CR Agreements") incorporate a customer's underlying account and service agreements and disclosures by reference and have New York governing law provisions. *Id.* Both CR Agreements include or incorporate language indicating that Merrill acts as "agent" for customers. *Id.* ¶ 23. Both CR Agreements also include language regarding the interest rates paid on Sweep Programs: (i) Sweep Programs "will bear a rate of interest that has been established for, and in light of the features of, the Sweep Programs"; and (ii) "[i]nterest rates paid on deposits are determined at the discretion of the Merrill Affiliated Bank based on economic and business conditions." *Id.* ¶ 24.

**2. Non-Retirement Accounts**

Merrill offers a suite of non-retirement CMAs that are subject to the Sweep Programs. *See id.* ¶ 25. Edge customers with CMAs agree to the Merrill Edge Self-Directed CMA Account Disclosures and Agreement ("EDGE CMA Agreement"), MLWM customers with CMAs agree to the CMA Financial Service Cash Management Account Disclosures and Agreement ("MLWM CMA Agreement"), and other non-retirement accounts are subject to similar agreements. *Id.* ¶ 26. Two different Sweep Programs are offered to non-retirement customers: the MLDDP for customers with Edge CMAs and the MLBDP for customers with other non-retirement accounts. *Id.* ¶ 27. The terms of those two programs are set forth and incorporated in the Edge CR Agreement, the MLWM CR Agreement, the underlying account agreements including the EDGE CMA Agreement and MLWM CMA Agreement, the Best Interest Disclosure Statement ("BI Statement"), and the Sweep Program Guide (collectively, the "Deposit Programs Documents"). *Id.* Like the CR Agreements, the Edge CMA Agreement and MLWM CMA Agreement both indicate that Merrill acts as "agent" for customers. *Id.* ¶ 28. The

underlying account agreements for the non-retirement accounts provide that customers in the MLBDP and MLDDP "will earn rates of interest determined 'based on economic and business conditions' and that rates accordingly 'may change daily.'" *Id.* ¶ 29. Plaintiffs allege that customers enrolled in specific Merrill advisory programs ("Advised Customers") were, through certain agreements ("Advisory Program Disclosures"), promised that: "Cash balances swept to a bank deposit account at one or more of our Bank Affiliates will be placed in a bank deposit account ***bearing a reasonable rate of interest*** that has been established for, and in light of the features of, the Cash Sweep Program." *Id.* ¶¶ 126–29. This specific language was removed in March 2023, but Plaintiffs allege it did not negate Defendants' existing and continuing duty to secure and negotiate rates based on "economic and business conditions." *Id.* ¶ 131.

### 3. Retirement Accounts

Merrill also offers an array of retirement accounts subject to a Sweep Program. *Id.* ¶ 30. Customers with an IRA agree to the Traditional IRA Disclosure and Custodial Agreement ("IRA Agreement"), and customers with a Roth IRA agree to the Roth Individual Retirement Account Disclosure and Custodial Agreement ("Roth IRA Agreement"). *Id.* Only the RASP Sweep Program is available for retirement accounts. *Id.* ¶ 31. The terms of the RASP are set forth and incorporated in the Edge CR Agreement, MLWM CR Agreement, underlying retirement account agreements, CMA Disclosures, Disclosure Statement, and Sweep Program Guide (collectively, the "RASP Documents" and, together with the Deposit Programs Documents, the "Sweep Program Documents"). *Id.* As with the other customer agreements, the retirement account agreements indicate that Merrill acts as "agent" for customers. *Id.* ¶ 32. The IRA Agreement and Roth IRA Agreement both stated that "[f]or accounts established through RASP, Merrill Lynch Affiliated Banks, and any other participating depositories, will set interest rates based on economic and business conditions." *Id.* ¶ 33. Both agreements, and other Merrill retirement

disclosures, also stated that sweep deposits in Merrill-affiliated banks "will bear a reasonable rate of interest." *Id.* ¶ 34. The Edge CR Agreement explicitly provides that "[t]he interest paid on retirement account assets will be at no less than a reasonable rate." *Id.* ¶ 116. Plaintiffs assert that Merrill attempted to remove the "reasonable rate" provision of the Edge CR Agreement in June 2024, but that the change was ineffectual. *Id.* ¶ 117.

**C. Interest Rate Comparison**

The primary thrust of Plaintiffs' complaint is that Defendants profited immensely off the Sweep Programs while Plaintiffs reaped little benefit off marginal interest rates—"the greater the amount of cash balances maintained in Deposit Accounts under the Sweep Programs and the lower the rate of interest paid on these cash balances, the more all of the Defendants benefit." *Id.* ¶ 46. Among the alleged financial benefits that Defendants received are (1) payments to Merrill from its bank affiliates paid on a per account basis, *id.* ¶ 42; (2) MAA compensation increases for growth in client participation, *id.* ¶ 43; (3) stable, cost-effective sources of funding for Merrill's bank affiliates, *id.* ¶ 44; and (4) service and maintenance charges collected by BAC on swept deposit accounts, *id.* ¶ 45. Plaintiffs allege that these benefits incentivized Defendants to provide unreasonably low rates of interest under the Sweep Programs. *Id.* ¶ 47.

Plaintiffs further allege that these practices were unreasonable where Merrill could have swept cash into government money market mutual funds, to unaffiliated depository institutions with more competitive rates, or simply kept its practice of sweeping into its affiliate banks but paid reasonable interest rates that tracked other Merrill-affiliated banks' offerings. *Id.* ¶¶ 48–51.

Under the RASP and MLBDP, from January 2022 through April 2025, Merrill paid interest rates in various tiers (based on customer assets under management) of 0.01% for Tier 1 and Tier 2, a range of 0.01% to 0.30% for Tier 3, and a range of 0.01% to 1.06% for Tier 4. *Id.* ¶

59. For the same period, customers in the MLDDP received a constant Tier 1 interest rate of 0.01%, irrespective of the amount of assets. *Id.* ¶ 60.

Plaintiffs provide numerous comparators as guideposts for what interest rates would have reflected current market conditions and competitive interest rates, and been reasonable under the Sweep Programs. First, Plaintiffs allege that as federal benchmark interest rates increased, those changes were not reflected in the cash sweep interest rates provided by Defendants. For example, the federal funds effective rate increased to over 5.00% in 2024, while MLDDP, and RASP and MLBDP Tier 1 and Tier 2, rates remained stagnant at 0.01%. *Id.* ¶¶ 59, 62–67. In the same period, the RASP and MLBDP Tier 3 and Tier 4 rates increased marginally in comparison, to 0.30% and 1.06% respectively. *Id.* As the Federal Reserve hiked the federal funds rate, the three-month Treasury rate, one-year Treasury rate, and overnight repo rate all followed suit—and Merrill's Sweep Programs rates did not. *Id.* ¶¶ 68–70. Second, Plaintiffs also allege that the interest rates for competitors' interest-bearing deposit accounts were significantly higher than those in Merrill's Sweep Programs. *Id.* ¶¶ 71–79. Third, Plaintiffs assert that the interest rates paid under the Sweep Programs were significantly below those paid out by other accounts at Merrill's own affiliate banks. *Id.* ¶¶ 80–87. Finally, Plaintiffs claim that the interest rates paid under the Sweep Programs were substantially lower than other institutions' sweep programs that swept cash to unaffiliated banks and money market funds. *Id.* ¶¶ 88–114.

## II. PROCEDURAL HISTORY

Plaintiff McCrary filed the original complaint on December 11, 2023, against Defendant Merrill. *See* Dkt. No. 1. In March 2025, this case was reassigned to this Court. On April 8, 2025, the Court issued an order consolidating the case into its current form. *See* Dkt. No. 58. On May 22, 2025, Plaintiffs filed the operative amended Consolidated Class Action Complaint.

Dkt. No. 63. On July 3, 2025, Defendants moved to dismiss the amended Consolidated Class Action Complaint. Dkt. No. 77. Since then, the parties have filed numerous notices of supplemental authority from related cases.[4] Dkt. Nos. 83, 91–92, 98–99, 102–03. The Motion is now fully briefed and before the Court for decision.

## DISCUSSION

### I. LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

---

[4] To the extent any of these notices of supplemental authority or the responses thereto have presented new arguments not included in the parties' briefs, the Court has disregarded those arguments.

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

## II. PRELIMINARY MATTERS

### A. The Claims Against BAC, BANA, and MAA Are Dismissed in Their Entirety

All claims as to BAC, and its wholly-owned subsidiaries, BANA and MAA, are dismissed. Plaintiffs bring all nine claims against all four defendants, Merrill, BAC, BANA, and MAA. Defendants argue that the claims against BAC, BANA, and MAA should be dismissed where Plaintiffs failed to allege that these entities engaged in any wrongdoing, were parties to any contract with Plaintiffs, or owed Plaintiffs any non-contractual duties. Mot. at 9–10. Plaintiffs reply that Defendants ignore the non-contractual claims of unjust enrichment and violation of New York General Business Law, and that BAC should be held liable where it controlled and benefitted from the Sweep Programs. Opp. at 23–24. Plaintiffs do not otherwise meaningfully respond to Defendants' arguments.[6]

#### 1. BAC

The Complaint fails to state claims against BAC where it fails to allege any relationship—contractual or otherwise—between any of the Plaintiffs and BAC and where it fails to allege sufficient facts to establish BAC's liability for Merrill's acts as its parent.

"It is a basic rule of corporate law that parent corporations are not held liable for the acts of their subsidiaries." *Standex Int'l Corp. v. QCP, Inc.*, No. 16-CV-00492 (KPF), 2017 WL 481447, at *5 (S.D.N.Y. Feb. 6, 2017) (citing *United States v. Bestfoods*, 524 U.S. 51, 61

---

[6] In a single page, Plaintiffs acknowledge Defendants' argument that BAC, BANA, and MAA were not parties to the relevant contracts—but do not respond to the argument that all contractual claims should be dismissed against these Defendants. Rather, they assert that this "ignores Plaintiffs' non-contractual claims, including unjust enrichment and [New York General Business Law] violations." Opp. at 23. Plaintiffs' only other argument for maintaining its action against BAC, BANA, and MAA rests on BAC's liability for the actions of its subsidiary, Merrill. *Id.* To the extent that Plaintiffs failed to respond to Defendants' arguments for dismissal, those claims are dismissed. *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("[A] court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014))).

(1998)). And "New York law disfavors disregard of the corporate form." *Sutton 58 Assocs. LLC v. Pilevsky*, 137 N.Y.S.3d 359, 362 (1st Dep't 2020). Plaintiffs fail to plead sufficient facts to establish a contractual relationship between Plaintiffs and BAC and have also failed to adequately plead any facts in support of establishing BAC's liability for its subsidiaries.

Plaintiffs fail to respond to the Motion to dismiss BAC with any meaningful opposition. Plaintiffs' assertions that "BAC, as the parent company of Merrill and the Merrill Affiliated Banks . . . control[led] the terms of the Sweep Programs" and "position[ed] both . . . to benefit financially," Compl. ¶ 45; Opp. at 23, and "participates in the administration of the Sweep Programs, including rate setting," Compl. ¶ 12, are wholly conclusory and insufficient to create liability for BAC for Merrill's actions. *See Whiteside*, 995 F.3d at 321.

Plaintiffs' only real argument in opposition is that Defendants ignore Plaintiffs' non-contractual claims. Opp. at 23. But the Complaint does not establish any relationship between any of the Plaintiffs and BAC, whether contractual, fiduciary, or otherwise, and thus all claims as to BAC are dismissed.

**2. BANA**

Plaintiffs' claims as to BANA are even more unavailing. As a factual matter, BANA's only relevance to this case is that "[f]unds swept by Merrill pursuant to its Sweep Programs are transferred to BANA, which sets the rates paid to customers under the Sweep Programs." Compl. ¶ 14. As a separate and distinct entity, the nationally chartered bank, BANA, is not responsible for decisions that Merrill made pursuant to *its* agreements with customers. BANA is merely the recipient bank of swept funds, and the Complaint pleads no contractual—or non-contractual—relationship with Plaintiffs. The Court will not extend liability to a bank-recipient of funds transferred by an affiliate corporation alleged to have violated a contractual or fiduciary relationship with its own customers. All claims as to BANA are dismissed.

**3. MAA**

Plaintiffs do not contest Defendants' arguments that no contractual relationship existed between Plaintiffs and MAA. Opp. at 23. Plaintiffs allege that MAA provides certain financial services to investment advisory programs at Merrill and that it has explicitly recognized it owes a fiduciary duty to Merrill customers. Compl. ¶¶ 37–38. Plaintiff Campton's retirement accounts were enrolled in the Merrill Lynch Investment Advisory Program. *Id.* ¶ 11. Plaintiffs allege that "MAA provides 'discretionary services' to certain Investment Advisory Programs, including Merrill Lynch Investment Advisory Program," *id.* ¶ 37, and that MAA has "certain fiduciary obligations" to act in customers' best interest, *id.* ¶ 38. However, Plaintiffs have failed to allege any facts that could establish a contractual relationship between Plaintiffs and MAA. The fragile assertion that MAA provides discretionary services to certain advisory programs is not enough to extend Merrill's own contractual relationships with Plaintiffs to MAA. Nor have Plaintiffs connected the alleged fiduciary duty MAA owes to Merrill customers to any actions that specifically relate to the Sweep Programs or Plaintiffs' allegations about Merrill's management of the Sweep Programs. Accordingly, the claims as to MAA must be dismissed in their entirety.

The proper defendant in this case is Merrill; additional defendants cannot be added based simply on their affiliation with Merrill absent specific allegations that could support legal claims against them. Those specific allegations are lacking as to BAC, BANA, and MAA, and all three are dismissed.

**B. Motion to Strike and Class Standing**

Defendants' arguments regarding class standing for employer-sponsored accounts and the motion to strike allegations about comparators are premature.

**1. Motion to Strike**

Defendants argue that Plaintiffs' comparators—such as money market funds, treasury bills, the federal funds rate, and Merrill's other products—are irrelevant as a matter of law and would be inadmissible at trial. Mot. at 24. In support of their motion to strike, Defendants spill much ink discussing an opinion of Judge Caproni in a similar but separate case. *Id.* at 25–26 (citing numerous decisions in *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-CV-07998 (VEC) (S.D.N.Y.)). Defendant is correct that the law-of-the-case doctrine can provide parties relief from "relitigat[ing] the very same issue previously adjudicated by [another judge], against the same party and relating to the same [disputes]." Mot. at 26 (quoting *Oakley Fertilizer Inc. v. Hagrpota for Trading & Distrib., Ltd.*, No. 11-CV-07799 (PAC), 2012 WL 5844193, at *2 (S.D.N.Y. Nov. 16, 2012)). But the Complaint on its face does not raise "the very same issue previously adjudicated by [Judge Caproni]" and is not "relat[ed] to the same [dispute]" within the meaning of the law-of-the-case doctrine. *Id.*

For the same reasons noted by Judge Caproni in denying a similar motion to strike comparators (comparators she had previously struck in her own prior cash sweep case), this Court refuses to strike those comparator allegations at this stage. *See Estate of Bernard Sherlip v. Morgan Stanley*, No. 24-CV-04571 (VEC), 2026 WL 2640882, at *9 (S.D.N.Y. Sept. 8, 2026). Plaintiffs here base their allegations on both the failure to pay "reasonable rates" and for failing to set rates based on "current market conditions and competitive rates." *Id.*; *see, e.g.*, Compl. ¶¶ 34, 40–41, 116 ("reasonable rates"); *id.* ¶¶ 33, 84, 132, 135–36, 140, 160 (set interest rates based on "economic and business conditions"). These comparators may prove to be of no help to Plaintiffs in eventually proving their case, and Defendants may potentially have law-of-the-case arguments to make at the *Daubert* or summary judgment stage, but there is no justification

at this juncture to strike the allegations from the Complaint. Defendants' motion to strike is denied.

**2. Class Standing**

Defendants assert that, because no Plaintiff is alleged to have held an employer-sponsored retirement account, Plaintiffs lack standing to raise claims based on those accounts. Mot. at 10. For Plaintiffs to have standing to bring a claim on behalf of a putative class, they must allege that they "personally ha[ve] suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant[s]" and that "such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). Defendants argue that employer-sponsored retirement accounts "are fundamentally different from individual retirement accounts." Mot. at 10. However, the concerns here rest not so much on the fundamental differences in the process of opening an account, *id.*, but rather the contractual and non-contractual duties owed on the accounts that are subject to the Sweep Programs. Given that retirement accounts—employer-sponsored or not—are subject to sweeps under the RASP, at this early stage of pleadings the Court finds they "implicate the same set of concerns as the conduct alleged to have cause injury to other members of the putative class." *NECA-IBEW*, 693 F.3d at 162. The Court denies the motion to dismiss as to employer-sponsored retirement accounts without prejudice to the Court's further consideration of this issue at a later stage in the case, including in connection with any motion for class certification.

## III. COUNTS ONE AND TWO STATE CLAIMS FOR BREACH OF CONTRACT

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by

the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (describing elements as (1) formation of contract, (2) performance by plaintiff, (3) failure of defendant to perform, and (4) damages). Count One alleges breach of contract on behalf of all putative class members. Count Two alleges breach of contract on behalf of the putative members of the retirement account subclass. Plaintiffs' salient claims are two-fold: Merrill breached its contractual obligation to provide Plaintiffs with reasonable interest rates on their deposits subject to the Sweep Programs, Compl. ¶¶ 173–75, and failed to provide interest rates that were determined based on economic and business conditions, *id.* ¶176. Defendants do not contest that there was an agreement between Merrill and Plaintiffs, nor do they contest that Plaintiffs performed, and they fail to refute that Plaintiff suffered damages from the alleged breach. Thus, dismissal at this stage rests on whether Plaintiffs have alleged a plausible claim as to Merrill's breach. They have.

Defendants make four arguments to dismiss the breach-of-contract claims: (1) that no breach could have occurred after "reasonable rate" was removed from the agreements, Mot. at 11–13; (2) that no breach could be premised on Merrill's "disclosure" that BANA would set rates based on "economic and business conditions," *id.* at 13–15; (3) that Merrill had no agency duty to negotiate sweep rates on customers' behalf, *id.* at 15; and (4) that ERISA and the Tax Code do not create a statutory obligation to ensure customers receive a reasonable rate of interest on retirement accounts and that no private right of action exists under the same, *id.* at 16–17. Defendants are correct on the latter two points, but not on the first two.

**A. "Reasonable Rate"**

Defendants seek the narrowing of Counts One and Two through the dismissal of a subset of discrete claims: "all claims premised on a breach of the reasonable rate provision for advised

customers, and claims after June 2024 for self-directed customers." Mot. at 11–13. But Plaintiffs have sufficiently pled that there were terms in each of the various CR Agreements, and incorporated documents, that either explicitly or implicitly, required Merrill to pay reasonable rates of interest on deposits under the Sweep Programs. Compl. ¶¶ 22–24, 26, 28–29, 30–34, 36, 40, 116, 126–29, 132–33, 141–42. The strikingly low interest rates paid under the Sweep Programs, as opposed to the rates in the numerous comparators that Plaintiffs identified, make out a plausible claim that Merrill breached this obligation. *Id.* ¶¶ 115–140. The interpretation of the agreements and incorporated documents, the application of those terms, and the applicability of the amendment to the "reasonable rate" language are all questions of fact that are not suitable for resolution at the motion to dismiss stage.

Because the Complaint's factual allegations are assumed true, and all reasonable inferences drawn in favor of the Plaintiffs, the allegations on the reasonable rates provisions adequately state a claim for breach of contract. Defendants argue that because the "reasonable rate" language was removed from the relevant agreements in March 2023 for Advised Customers, and in June 2024 for self-directed customers, a breach claim cannot stand for each group after those respective dates. Mot. at 12–13. This fails to consider two aspects of Plaintiffs' breach of contract claims. Plaintiff has sufficiently pled that Defendants breached their contractual agreement by failing to provide reasonable rates of interest. At this stage whether the later amendment of the agreements ends any breach is a question of fact, first because Plaintiffs allege that the removal of the "reasonable rate" language was ineffectual and that the provision was still binding after the textual amendments. Compl. ¶¶ 117, 182; *id.* at 46 n.75. And, second, because Plaintiffs' theory of the case is not restricted solely to the explicit "reasonable rate" language in either contract. *See* Compl. ¶¶ 174–75, 180–81. Defendants'

contrary arguments only serve to illustrate that the dispute is a factual one. For example, for self-directed customers, the Edge CR Agreement amendment, cited by Defendants in their motion, removes the "'reasonable rate' of interest" language, yet states that the change "will not impact the actual rate of interest paid" and that "[a]s before, interest rates paid on deposits are determined at the discretion of the Merrill affiliated banks based on economic and business conditions." Mot. at 12. At the motion to dismiss stage, this contractual ambiguity must be resolved in Plaintiffs' favor. *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

In support of Plaintiffs' claims that Merrill owed *all* members of the purported class a duty to provide reasonable interest rates on swept deposits—advised, self-directed, and retirement accounts alike—Plaintiff has pointed to language in relevant agreements covering the entire class that may be read to incorporate or imply a duty to not place Plaintiffs' funds in accounts earning paltry interest while comparable rates in other areas of the market soared. *See, e.g.*, Compl. ¶¶ 19, 23, 28, 32, 38–39, 146. Defendants' arguments that the Advisory Program Disclosures were amended in March 2023, and the Edge CR Agreement in June 2024, *see* Mot. at 11–12, thus does not overcome the low burden of persuasion that Plaintiffs must meet at this stage.

The same conclusion applies to Plaintiffs' Count Two claims for breach of contract as to the retirement subclass. Given that Plaintiffs have adequately pled at least an implied contractual duty for Merrill to pay reasonable interest on accounts subject to the RASP programs, the motion to dismiss is denied on Count Two as to Defendant Merrill.

**B. "Economic and Business Conditions"**

Plaintiffs' second theory of breach of contract rests on Defendants' failure to provide interest rates that were determined based on "economic and business conditions." The relevant

agreements read: "Interest rates paid on deposits are determined at the discretion of [BANA] based on economic and business conditions." Defendants argue that delegating discretion to BANA does not obligate Merrill to do anything, and thus there is no duty Merrill could have breached. Mot. at 13. This, again, is a question of fact. It is well-established in the Second Circuit that "[t]he act of delegation . . . does not relieve the delegant of the ultimate responsibility to see that the obligation is performed. If the delegate fails to perform, the delegant remains liable." *Contemp. Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2d Cir. 1977). What this delegation required of Merrill, and whether Merrill breached any duty to customers, is not for the Court to decide at this juncture. Plaintiffs have sufficiently alleged facts that establish a plausible contractual obligation for Merrill to ensure interest rates on swept cash that were "based on economic and business conditions," were "variable," and "may change daily," Compl. ¶¶ 24, 29, 33, 132–33, 160, and that Merrill breached those duties by paying stagnant rates untethered to economic and business conditions, *id.* ¶¶ 59, 62–67, 68–70, 71–79, 80–87, 88–114.

As Defendants' own cited cases illustrate, the question of what discretion was provided to BANA, and the import of economic and business conditions on the setting of interest rates is a factual question that cannot be resolved on a motion to dismiss.[7] *See, e.g.*, *Richards v. Direct Energy Servs., LLC*, 120 F. Supp. 3d 148, 160–61 (D. Conn. 2015) (denying motion to dismiss where "at this stage . . . it was not unreasonable for a consumer to interpret 'business and market conditions' as factors related, at least in part, to wholesale market pricing" even where rates were

[7] Defendants cite to *Richards v. Direct Energy Servs.*, 915 F.3d 88, 97–98 (2d Cir. 2019), for the proposition that a "defendant did not breach discretion in considering profit margin in setting rates where contract disclosed that rates may vary 'based upon business and market conditions.'" Mot. at 14. At that stage of the case, the Second Circuit was reviewing the district court's grant of summary judgement on plaintiff's breach of the implied covenant claim, after exhaustive fact and expert discovery had taken place. As explained above, the Second Circuit in the same case had previously affirmed the district court's denial of a motion to dismiss on the exact same point. Again, Merrill's argument may prove convincing at a later stage—but it cannot succeed now.

set "exclusively at [Defendants'] discretion."), *aff'd*, 915 F.3d 88 (2d Cir. 2019). Plaintiffs have adequately pled a breach on this theory as well.

**C. Agency, ERISA, and Tax Code**

For the reasons stated above, Plaintiffs have sufficiently pled facts to support Count One and Count Two. To the extent that Plaintiff intended to bring separate counts under a theory of agency and under ERISA and the Tax Codes, those counts would be dismissed. Defendants are correct that the unambiguous contractual provisions relating to Merrill as "agent" of customers is limited strictly to the agent responsibilities identified in the relevant agreements. Mot. at 15. As agent of Plaintiffs, Merrill only agreed to open deposit accounts at affiliate banks to hold swept cash, remit cash to those accounts, and make withdrawals from the same. *Id.*; Compl. ¶¶ 13, 23, 28, 32. It is "elementary agency law doctrine . . . that the legal duties of an agent may be defined and circumscribed by agreement between principal and agent." *Mickle v. Christie's, Inc.*, 207 F. Supp. 2d 237, 244 (S.D.N.Y. 2002); *see also G.K. Alan Assoc. v. Lazzari*, 840 N.Y.S.2d 378, 384 (N.Y. App. Div. 2007) ("The duties of an agent are defined by the terms of the agreement that gave rise to the agency."). To the extent Plaintiffs attempt to bring their breach of contract claims under Count One and Count Two on a theory of agency, that claim would be dismissed.

The same applies to the extent Plaintiffs intended to ground their Counts One and Two breach of contract claims on ERISA or the Tax Code. Plaintiffs suggest that a breach of contract could be premised on Merrill "expressly incorporating its obligations under the IRC and ERISA to seek and secure a reasonable rate of interest for all retirement customers." Compl. ¶ 180. But there is no private right of action for these legal obligations, and to the extent Plaintiffs attempt to "find in [the] contract[s] a state-law right of action for violation of a federal law under which no private action exists" the Court declines to find such a right. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198 (2d Cir. 2005) (affirming dismissal of contract claim premised on

violation of a federal law incorporated by reference). To the extent any aspect of Plaintiffs breach of contract claims under Count One and Count Two rests on a theory of violation of ERISA and the Tax Codes, those theories cannot proceed.

Defendants' motion to dismiss the breach of contract claims against Merrill under Count One and Count Two of the Complaint is denied. Plaintiffs' theories of agency, or ERISA and Tax duties, are not viable, but their other breach of contract theories survive.

## IV. COUNTS THREE AND FOUR STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Count Three alleges Defendants breached the implied covenant of good faith and fair dealing as to all putative class members. Count Four alleges Defendants breached the implied covenant of good faith and fair dealing as to the putative members of the retirement subclass. Defendants assert that Plaintiffs simply rely on the implied covenant to write additional obligations into the agreement and that Plaintiffs have failed to identify any contractual benefits that were denied. Mot. at 21. Because parties are allowed to plead claims in the alternative, the motion to dismiss these claims entirely is denied.

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). Although breach of this covenant may give rise to a claim of relief, *see Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998), there are limitations on its scope. The "intent and reasonable expectations" of parties entering into a given contract fixes the boundaries of the covenant of good faith and fair dealing, provided that those expectations are consistent with the express terms of the contract. *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989); *see also Dalton*, 87 N.Y.2d at 389. The purpose of the implied covenant of good faith is to further an agreement by protecting a promisee "not against breach of

the express terms of a contract but of the reasonable expectations and inferences otherwise derived from the agreement." *TVT Records v. Island Def Jam Music Grp.*, 244 F. Supp. 2d 263, 278 (S.D.N.Y. 2003) ("Such a claim may be brought only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.").

However, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Courts in this district have consistently dismissed claims for breach of the implied covenant of good faith as "redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of an express provision of the underlying contract." *TVT*, 244 F. Supp. 2d at 277 (quoting *EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 873 (S.D.N.Y. 2000)). A breach of the implied covenant of good faith claim can survive a motion to dismiss "only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Id*. at 278. However, "where the meaning of a contract is in doubt, courts allow a breach of contract claim and a breach of the implied covenant claim to be pleaded in the alternative." *Nuance Commc'ns, Inc. v. Int'l Bus. Machines Corp.*, 544 F. Supp. 3d 353, 373 (S.D.N.Y. 2021), *aff'd*, No. 21-1758-cv, 2022 WL 17747782 (2d Cir. Dec. 19, 2022). Alternative pleading is permitted in such circumstances because "[a] party is only precluded from recovering on both theories at the same time." *Fantozzi v. Axsys Techs., Inc.*, No. 07-CV-02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).

Here, Plaintiffs make arguments both about the express terms of the contract and some implied duty within the contract as a whole to support their breach claims. Where it is uncertain

whether Plaintiff will succeed on its breach of contract claims, and where Plaintiffs have alleged with sufficient specificity that, based on the contracts as a whole, they reasonably expected reasonable rates of interest to be paid on swept funds and that those rates of interest would be determined based on economic and business conditions, the Good Faith and Fair Dealing claims survive the motion to dismiss, as an alternative theory of contractual damages. *See* Compl. ¶¶ 143, 184–86.

Defendants' arguments that Plaintiffs have not alleged they were denied the benefits of the Sweep Programs are unconvincing. *See* Mot. at 21. Plaintiffs have sufficiently alleged that customers expected to receive *some* benefit off the Sweep Programs, including a reasonable interest that was based on economic and business conditions, and were denied this benefit. *See, e.g.*, Compl. ¶¶ 20, 59–60, 68–70, 143, 184–86. The very purpose "of the implied covenant of good faith is to prevent a contracting party from 'engaging in conduct that will deprive the other party of the benefits of the agreement.'" *IMI Sys. Inc. v. Sterling Software, Inc.*, No. 90-CV-02005 (JMC), 1991 WL 222107, at *2 (S.D.N.Y. Oct. 18, 1991). Plaintiffs also allege that "Defendants reaped significant benefits from the Sweep Programs to the detriment of their customers." Compl. at 17; *id.* ¶¶ 42–46. And that "[n]othing prevented Defendants from paying or securing reasonable rates for customer cash," but rather "[b]ased on the adverse incentives, Defendants limited customers to unreasonably low rates of interest under the Sweep Programs." *Id.* ¶ 47. At this stage of the case, these allegations are sufficient to support the implied covenant claims in the alternative.

This conclusion is also consistent with the growing chorus of courts sustaining implied covenant claims in sweep program cases, at least at the motion to dismiss stage. *See, e.g., Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 714–16 (S.D.N.Y. 2025)

(denying motion to dismiss implied covenant claim for sweep programs); *Goldsmith v. UBS Fin. Servs. Inc.*, No. 24-CV-6354 (GHW), 2026 WL 819461, at *17–18 (S.D.N.Y. Mar. 25, 2026) (same); *In re JPMorgan Chase Cash Sweep Program*, No. 24-CV-06404 (LGS), 2026 WL 396055, at *9 (S.D.N.Y. Feb. 12, 2026) (same); *Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 24-CV-04571 (VEC), 2026 WL 2640882, at *10 (S.D.N.Y. Sept. 8, 2026) (same); *Witchko v. Edgeco Holdings, L.P.*, No. 25-CV-00781, 2026 WL 2606092, at *4 (W.D. Pa. June 30, 2026) (same); *Mehlman v. Ameriprise Fin., Inc.*, No. CV 24-3018 (JRT/DLM), 2025 WL 2403252, at *9–10 (D. Minn. Aug. 19, 2025) (same); *Dey v. Robinhood Markets, Inc.*, 780 F. Supp. 3d 882, 893–94 (N.D. Cal. 2025) (same); *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961, 989–91 (S.D. Cal. 2025) (same).

Accordingly, Defendants' motion to dismiss Counts Three and Four against Merrill is denied.

## V. COUNT FIVE STATES A CLAIM FOR BREACH OF FIDUCIARY DUTY AS TO ADVISED CUSTOMERS BUT NOT SELF-DIRECTED CUSTOMERS

"To determine if a fiduciary relationship exists, New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority and influence over the first." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006). "While the exact limits of what constitutes a fiduciary relationship are impossible of statement, a fiduciary relationship may be found in any case in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006). A fiduciary relationship may arise under a contract, *id.* at 195, but a contractual relationship is not required; "[r]ather, the ongoing conduct between parties must be considered." *Pension Comm. of Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 196.

Whether a fiduciary duty exists is a question of fact and generally not the basis for dismissal under Rule 12(b)(6). *Abercrombie*, 438 F. Supp. 2d at 274; *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 455 (S.D.N.Y. 2012). To survive a motion to dismiss, the plaintiff "must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Abercrombie*, 438 F. Supp. 2d at 274.

Defendants' primary contention is that Plaintiffs failed to establish a fiduciary duty on behalf of the self-directed customers. Mot. at 17–20. As to self-directed customers only, Defendants are correct. Plaintiffs' assertions that Merrill's explicit agreement to act as "agent" in connection with the Sweep Programs is not in itself enough to state a claim for breach of fiduciary duty. *See* Compl. ¶¶ 19, 23, 28, 32. As discussed above, the Complaint identifies limited and specific agency roles that Merrill agreed to undertake for Plaintiffs. For example, for retirement accounts, Merrill stated sweep accounts would be opened in Merrill's name "as your agent" and that "Merrill acts as a broker (*i.e.*, agent) for its private clients" and "provides access to banking services, including lending and cash sweep services." Compl. ¶ 23; *see also id.* ¶ 32. For non-retirement accounts, Merrill stated it was "acting as agent and messenger for its customers for the deposits at BANA" and that Merrill "acting as your agent" remits credit balances to accounts established by Merrill at BANA. *Id.* ¶ 28. But Plaintiffs go a step too far in asserting that "[a]s its customers' agent in connection with the Sweep Programs, Merrill owed fiduciary duties . . . [which] required it to act in its retail customers' best interests and prohibited it from placing its own interests ahead of its retail customers' interests." *Id.* ¶ 145. Plaintiffs are correct that Merrill is its agent, but only for the limited role outlined in the contractual agreements. Plaintiffs have failed to adequately allege necessary facts to support a broader

fiduciary duty as to the self-directed customers. *See Oppenheimer*, 802 F. Supp. 3d at 716 (an agreement to "act as an agent for the purpose of performing only limited tasks on a customer's behalf" including "opening one or more accounts at deposit banks, sweeping cash from brokerage accounts and depositing it with the deposit banks, and withdrawing cash from deposit bank accounts and returning it to brokerage accounts" does not create a fiduciary relationship); *see also In re Wells Fargo Cash Sweep Litig.*, No. 24-CV-04616 (VC), 2025 WL 1785315, at *3 (N.D. Cal. June 27, 2025); *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961, 987–88 (S.D. Cal. 2025).

In contrast, where allegations state that the agent expressly promised to act as a fiduciary, the claim will survive a motion to dismiss. Plaintiffs allege that for the Advised Customers, Merrill expressly agreed it was "acting as a fiduciary," Compl. ¶¶ 119, 154 (for RASP customers), that Merrill has "certain fiduciary obligations" in providing services, and "[a]s a fiduciary, [Merrill] will act in your best interest," *id.* ¶¶ 38, 146 (for customers in the Investment Advisory Programs). Defendants' objection to the fiduciary duty claim as to Advised Customers is limited to arguing that disclosure of the potential conflict of interest defeats the claim. *See* Mot. at 20. But Plaintiffs' breach of fiduciary duty claims are not solely based on a conflict of interest and thus, disclosure, even if true, is not a complete defense as a matter of law. Defendants have failed to put forth any additional arguments supporting dismissal of Plaintiffs' fiduciary duty claims as to the Advised Customers. Plaintiffs have alleged facts sufficient to support a claim that Merrill breached its fiduciary duty to the Advised Customers, Compl. ¶¶ 38, 119, 146–47, 154, and accordingly, the motion to dismiss Count Five as to the Advised Customers is denied. The motion to dismiss Count Five as to the self-directed customers is granted.

## VI. COUNT SIX AND EIGHT FAIL TO STATE CLAIMS FOR NEGLIGENCE AND FOR UNJUST ENRICHMENT, COUNT SEVEN STATES A CLAIM FOR NEGLIGENT MISREPRESENTATION AND OMISSIONS

### A. Count Six Fails to State a Claim for Negligence

Count Six of the Complaint asserts a claim for negligence, alleging that Defendants owed Plaintiffs a duty to act with reasonable care in connection with their balances subject to the Sweep Programs and that they breached that duty by failing to provide fair and reasonable sweep interest rates. *See* Compl. ¶¶ 199–203. This claim is duplicative of Plaintiffs' contract and quasi-contract claims and is foreclosed as a matter of New York law.

In determining whether claims are duplicative, the Court evaluates "the nature of the injury, how the injury occurred and the harm it caused." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290–91 (N.Y. 2023). Plaintiffs' negligence claim rests on Defendants' "failing to provide Plaintiffs and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Programs." Compl. ¶ 202. This asserts an injury of identical nature, occurrence, and harm, to the injury alleged in Counts One through Four. *See id.* ¶¶ 175–77, 181–83, 186, 189.

Plaintiffs appear to argue that a recent limit on the economic loss doctrine saves their claims from duplicity. Not so. True, the New York Court of Appeals recently clarified that the economic loss rule does not have an application beyond the products liability context. *See IKB Int'l*, 40 N.Y.3d at 290. However, Plaintiffs misconstrue that court's holding. *IKB* concluded that the economic loss rule has been improperly "conflate[d]" by "federal courts applying New York law" with the "prohibition against duplicative contract and tort claims." *Id.* at 290. But *IKB* merely found that federal courts were using the wrong term for the analysis and did not upset the substance of any decisions barring duplicative claims. *See id.*; *see also Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n*, No. 21-CV-11019 (BCM), 2024 WL 1381354, at *15

n.22 (S.D.N.Y. Mar. 31, 2024) ("Notably, the Court of Appeals [in *IKB Int'l*] did not critique the result in [the federal cases]; it simply noted that these courts used the wrong label for their analyses.").

Here, Plaintiffs' negligence claims are entirely duplicative of their contract claims and are accordingly dismissed.

**B. Count Seven States a Claim for Negligent Misrepresentation and Omissions as to Merrill**

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012).

Defendants make only two arguments in their motion to dismiss the negligent misrepresentation claim: that Merrill disclosed all relevant information and that Plaintiffs have not identified which misrepresentations they relied upon or how they were relied upon to Plaintiffs' detriment. Mot. at 22–23. Neither defeats Plaintiffs' claims at this stage of the case. In opposition, Plaintiffs convincingly point to numerous allegations in the Complaint that sufficiently allege that Plaintiffs relied on the purported misrepresentations to their detriment. *See* Opp. at 12 & n.7; Compl. ¶¶ 8–11, 34–35, 40–41, 152–54, 155–58, 160–61, 205–09. The negligent misrepresentation claims may well fail under New York law, given that they are promissory and relating to future events. *See Liberty Cap. Grp,* 802 F. Supp. at 718. However, Defendants did not make this argument in their motion to dismiss, and only placed it before the

Court when the parties briefed the related notice of supplemental authority, *see* Dkt. Nos. 91–92. Because *Liberty Capital* was based on existing New York law, and there is no discernible reason why Defendants could not have raised this argument in their motion, the Court cannot consider it on the present motion. *See, e.g.*, *Ravarino v. Voya Fin. Inc.*, No. 3:21-CV-1658 (OAW), 2023 WL 3981280, at *1 n.1 (D. Conn. June 13, 2023) (declining to consider new arguments raised in notices of supplemental authority). Accordingly, the motion to dismiss the negligent misrepresentation claim as to Merrill is denied.

**C. Count Eight Fails to State a Claim for Unjust Enrichment**

Prevailing on a claim of unjust enrichment in New York requires a plaintiff to allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001). A claim for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020). "[A] plaintiff cannot maintain an unjust enrichment claim when there is a valid and enforceable contract between the parties covering the dispute at issue." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-00432 (JSR), 2021 WL 2667029, at *9 (S.D.N.Y. June 29, 2021). A claim for unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91 (N.Y. 2012) (collecting cases). *See also Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims.") (collecting cases).

Plaintiffs' unjust enrichment claim is entirely duplicative of the Complaint's other claims, relying on "the same factual allegations and the same theory of liability." *Id.* at 249. Plaintiffs

grasp to save this Count by asserting that "there is a dispute over the existence, scope, or enforceability of the putative contract." Opp. at 20 (quoting *Hofmann v. Long Island Univ.*, 2024 WL 3262819, at *1 (2d Cir. July 2, 2024)). Nowhere in the Complaint do Plaintiffs allege that there is any genuine dispute as to the existence of a valid and enforceable contract covering the dispute at issue. *See Trustpilot*, 2021 WL 2667029, at *9–10 (Observing that a "[p]laintiff may plead breach of contract and unjust enrichment in the alternative when the plaintiff disputes the existence and enforceability of the contract at issue" but may not "maintain an unjust enrichment claim when there is a valid and enforceable contract between the parties covering the dispute."). Plaintiffs' claims are likewise duplicative of their New York General Business Law claims as well. *See Barton*, 535 F. Supp. 3d at 249. Accordingly, the motion to dismiss Count Eight is granted.

## VII. COUNT NINE STATES A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349

Count Nine alleges Defendants violated Section 349 of New York's General Business Law ("GBL") by paying unreasonably low interest rates; depriving customers' rights through the modification of the Edge CRA; abusing managerial discretion; breaching fiduciary, contractual, or other duties; and making false and deceptive statements relating to interest rates and duties of the Sweep Programs. Compl. ¶ 215. Section 349 prohibits, *inter alia*, "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). To state a Section 349 claim, a plaintiff must allege (1) a consumer-oriented transaction; (2) deceptive or materially misleading acts or practices by defendant; and (3) that those acts or practices caused an injury to plaintiff. *Nourieli v. Lemonis*, No. 20-CV-08233 (JPO), 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021).

Defendants' motion to dismiss only makes two arguments against Plaintiffs' GBL claim: that the claim is duplicative, and that Merrill disclosed that BANA and Merrill "financially benefit" from the Sweep Programs. Mot. at 23–24. But Plaintiffs' GBL claims are distinct from their breach of contract and implied covenant claims. *See Oppenheimer*, 802 F. Supp. 3d at 719–20 (denying motion to dismiss GBL claims for sweep program where the claim of misleading or deceptive contract provisions is distinct from the express contract claims); *see also McNeil v. Cap. One Bank, N.A.*, No. 19-CV-00473 (FB) (RER), 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29, 2020) (denying motion to dismiss GBL claim where allegation that a key contract term being defined in an unexpected way violated the GBL is separate from breach of contract claim).

Defendants' argument that disclosure of financial benefit to Merrill suffices to eliminate Plaintiffs' GBL claims fares no better. Plaintiffs' GBL claim rests on the actual management of the Sweep Programs and the alleged false and deceptive statements related to them. That sweep rates "may be higher or lower" does not incontrovertibly refute Plaintiffs' allegations as a matter of law. *See* Compl. ¶¶ 158–59. The Complaint asserts, *inter alia*, the following false and deceptive statements and practices: that "interest rates paid on customer deposits" are "based on economic and business conditions," determined by the Merrill affiliate banks, Compl. ¶¶ 24, 29, 33, 132–33, 160; that for certain customer accounts, swept funds will be placed in accounts "bearing a reasonable rate of interest" *id.* ¶¶ 126–129; and that Merrill removed the "reasonable" language from numerous agreements to Plaintiffs' detriment, *id.* ¶¶ 40, 117, 131. Plaintiffs' argument rests, in part, on Defendants' disclosures themselves being misleading. *See Volino v. Progressive Cas. Ins. Co.*, No. 21-CV-06243 (LGS), 2022 WL 5242894, at *4 (S.D.N.Y. Oct. 6, 2022) (denying motion to dismiss and rejecting disclosure defense under the GBL where complaint alleges Defendants' disclosure was misleading and that Defendant "*did not do* what its

policy said it would do") (emphasis in original). Accordingly, Plaintiffs have sufficiently stated a claim against Merrill under Section 349 and the motion to dismiss Count Nine against Merrill is denied.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part: specifically, all counts against Defendants BAC, BANA, and MAA are dismissed, Counts Six and Eight are dismissed, and Count Five is dismissed as to the self-directed customers. The motion is denied in all other respects and Counts One, Two, Three, Four, Five (as to Advised Customers), Seven and Nine will proceed against Defendant Merrill.

The Clerk of Court is respectfully directed to terminate Dkt. No. 77 and terminate Defendants Bank of America Corporation, Bank of America National Association, and Managed Account Advisors LLC from this case.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge